**NGAI CHI LAM, Appellant,**

v.

**P. A. ESPERDY, District Director for the New York District, Immigration and Naturalization Service, Appellee.**

**No. 686, Docket 33600.**

United States Court of Appeals
Second Circuit.

Argued May 23, 1969.

Decided June 4, 1969.

Thomas Sung, New York City, for appellant.

Daniel Riesel, Spec. Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, New York City, on the brief), for appellee.

Before LUMBARD, Chief Judge, FEINBERG, Circuit Judge, and TIMBERS, District Judge.*

PER CURIAM:

▇ Ngai Chi Lam, an alien crewman who concededly is deportable and subject to a warrant of deportation to Hong Kong, claims that the Attorney General, in directing inquiry to the United Kingdom rather than to the Ian Smith regime

* Chief Judge of the District of Connecticut, sitting by designation.

of Rhodesia, has deprived appellant of his right to be deported to Rhodesia, the country of his choice, pursuant to Section 243(a) of the Immigration and Nationality Act, 8 U.S.C. § 1253(a) (1964). The District Court for the Southern District of New York, Harold R. Tyler, Jr., District Judge, on May 5, 1969, relying upon the opinion of Judge Ryan in an almost identical case, Shyu Jeng Shyong v. Esperdy, 294 F.Supp. 355 (S.D.N.Y.1969), denied appellant's motion for summary judgment in the instant declaratory judgment action seeking to invalidate a deportation order, granted appellee's cross motion for summary judgment and dismissed the complaint. We affirm.

■ We take this occasion, moreover, to suggest that Special Inquiry Officers, acting in accordance with Section 242(b), 8 U.S.C. § 1252(b) (1964), should decline to accept an alien's designation of a country as his choice for deportation, under the first step provided for in Section 243(a), if the officer finds that such designation is not made in good faith but solely for the purpose of delay in effecting deportation, of which the instant case is a striking illustration.

Here the alien is a 36 year old Chinese crewman. He was born on the Chinese mainland where his parents now reside. His wife and four children reside in Hong Kong, which is his last foreign residence. He entered the United States with seamen's papers issued by the government of Hong Kong.

He has no contacts whatsoever with Rhodesia, including no friends, no relatives and no prior residence in that country.

■ Admitted to the United States on September 9, 1968 as a non-immigrant crewman, he deserted his ship the day it sailed from New York and remained unlawfully in the United States until he was taken into custody by immigration officers on September 20, 1968. He was afforded a deportation hearing and on September 23, 1968 was ordered deported, in accordance with the statutory priority pattern of Section 243(a), to either Rhodesia (country of his choice), the Republic of China on Formosa (country of his nationality) or Hong Kong (his last residence). The governments of the former two places having declined to accept him as a deportee, he was ordered on January 27, 1969 to surrender for deportation to Hong Kong. He did surrender as ordered, but simultaneously commenced the instant action in the District Court and has succeeded in having his deportation stayed throughout the court proceedings.

Stripped to its essential effect, the nine month delay which has ensued since this alien's arrest on September 20, 1968 has served only one purpose: to delay the lawful deportation of a concededly deportable alien. He has achieved this unwarranted delay by a sham designation of Rhodesia as the country of his choice for deportation under the first step provided for in Section 243(a). In designating Rhodesia, he of course knew that the United States recognizes only the United Kingdom as the legitimate government for Rhodesia; that, since the United States Consular Office in Rhodesia is accredited to the United Kingdom, the United States recognizes only United Kingdom passports and visas for travel to Rhodesia; and that the Attorney General's inquiry to the British Consul General in New York for permission for this alien to enter Rhodesia as a deportee necessarily would be, as it was, turned down.[1]

In view of the absence of any contacts whatsoever between this alien and Rho-

1. Aside from the instant case and Shyu Jeng Shyong v. Esperdy, *supra* (in each of which the alien is represented by the same counsel), we are informed that in 13 other cases now pending in the New York District of the Immigration and Naturalization Service deportation orders have been entered where Chinese crewmen have designated Rhodesia (which is landlocked) as their country of choice for deportation pursuant to Section 243(a).

desia, he knew full well that his designation of Rhodesia was abortive *ab initio*. Appellant's counsel, in response to questioning by the Court at the argument of this appeal, informed us with commendable candor that appellant really did not want to go to Rhodesia; that if accepted for deportation there, he would withdraw his designation; but that, since the statute gave him the right to designate a country of his choice for deportation, he was exercising that right to gain as much time as possible in the United States, knowing that the Ian Smith regime would not be contacted and that the instant litigation would follow.[2]

Under these circumstances, the Special Inquiry Officer would have been justified in declining—and in the future we assume will decline—to accept the alien's designation of Rhodesia as the country of his choice for deportation pursuant to the first step provided for in Section 243 (a), on the ground that such designation was not made in good faith but solely for the purpose of delay in effecting deportation. Appropriate findings in support of such determination of course should be made by the Special Inquiry Officer.

Such procedure will assure that the correct intent of Congress is carried out with respect to permitting an alien to designate a country of his choice for deportation—not to make a sham designation solely for purposes of delay. And such procedure hopefully will spare our already overburdened courts, trial and appellate, from such unnecessary intrusions as illustrated by this case.[3]

Affirmed. The mandate shall issue forthwith so that appellant may be deported to Hong Kong without further delay.

2. A further indication of lack of good faith in designating Rhodesia as his country of choice for deportation is the fact that, as counsel for appellee has informed us, this alien applied for and was granted the privilege of voluntary departure under Section 244(e), 8 U.S.C. § 1254(e) (1964); despite his representations that he would depart voluntarily within the time prescribed, he failed to do so. Quite obviously, he never had any intention of actually going to Rhodesia, regardless of which government controlled that country.

3. See Wong Kam Cheung v. Immigration and Naturalization Service, 408 F.2d 35 (2 Cir. 1969), wherein we held that an alien has no absolute right to withdraw a designation, over opposition by the Immigration Service, where such withdrawal is "used as a vehicle for launching administrative appeals and further litigation, all for the purpose of delaying deportation." Just as it would defeat the statutory purpose of providing an expeditious procedure for the deportation of aliens expelled from the country if frivolous withdrawals of statutory designations were permitted, it would similarly defeat the purpose if we held there is an absolute right to a frivolous designation. We decline to do so. The statutory purpose mades it incumbent upon the Special Inquiry Officer to refuse acceptance of designations such as the instant one.