**UNITED STATES of America,**
**Plaintiff–Appellee**

v.

**Bassem M. SHARIF,**
**Defendant–Appellant.**

No. 87–7548.

United States Court of Appeals,
Eleventh Circuit.

Feb. 6, 1990.

---

Kenneth Lee Cleveland, Birmingham, Ala., for defendant-appellant.

Frank W. Donaldson, U.S. Atty. and John E. Ott, Asst. U.S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before JOHNSON and EDMONDSON, Circuit Judges, and PECKHAM *, Senior District Judge.

EDMONDSON, Circuit Judge:

A jury convicted appellant Bassem Mohammad Sharif of possessing marijuana with intent to distribute, a violation of 21 U.S.C.A. sec. 841(a)(1) (1981), and of carrying a firearm in relation to a drug trafficking offense, a violation of 18 U.S.C.A. sec. 924(c) (Supp.1989). Sharif appeals his section 841(a)(1) conviction and the subsequent revocation of his probation. For the reasons stated below, we affirm.

## I. CONVICTION

An Alabama State Trooper observed Sharif driving a Datsun about one car length behind a Porsche driven by Sharif's friend, James Litman. Both cars were moving at more than ninety miles per hour. The Trooper passed the cars and signaled with his flashing lights and siren for Litman and Sharif to stop. Neither car slowed; instead both attempted to pass the Trooper. The Trooper then turned his car

so that it blocked the highway. After Litman's Porsche collided with the Trooper's car, both Litman and Sharif stopped. The Trooper arrested Litman and Sharif for speeding, resisting arrest, and possessing (in violation of permit laws) a firearm found in Litman's brief case.

When the Troopers impounded and inventoried the cars, they found a handgun in the Datsun. Behind the front seat of the Porsche, the Troopers found eleven pounds of marijuana, sealed in clear-plastic zip-lock bags, inside an opaque garbage bag and covered by a leather jacket. They also found twelve ounces of cocaine in the Porsche. The Troopers determined that Litman owned both cars.

Litman and Sharif were then indicted on four counts of drug-related offenses. Litman pleaded guilty and claimed ownership of the drugs. Sharif claimed that Litman had hired him to drive the Datsun to Litman's girlfriend's home, and Sharif denied knowledge of the drugs. A jury concluded, after hearing testimony which included that of Litman and Sharif, that Sharif was guilty on counts related to marijuana and the firearm.

Sharif argues that the evidence was insufficient to support a guilty verdict for possession of marijuana with intent to distribute. In considering Sharif's appeal, this court must view the evidence in the light most favorable to the government, with all reasonable inferences drawn in favor of the jury's verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Arango*, 853 F.2d 818, 825 (11th Cir.1988). The conviction should be reversed "only if no reasonable trier of fact could have found [the defendant] guilty beyond a reasonable doubt." *United States v. Watson*, 866 F.2d 381, 386 (11th Cir.1989).

Sharif points out that no drugs were found in the Datsun and that Litman testified that he, not Sharif, loaded marijuana into the Porsche. Although Sharif

* Honorable Robert F. Peckham, Senior U.S. District Judge for the Northern District of California, sitting by designation.

was present when the drugs were loaded and although Sharif admittedly suspected Litman of dealing in drugs, Sharif testified at trial that he had no reason to know that Litman had loaded drugs into the Porsche.

The government proceeded against Sharif on the theory that he aided and abetted Litman in drug trafficking. Therefore, the prosecution "had only to show that [Sharif] willfully associated himself with the enterprise to possess the drugs and contributed to its success." *United States v. Richardson*, 764 F.2d 1514, 1525 (11th Cir.1985); *see also United States v. Pantoja–Soto*, 739 F.2d 1520, 1525 (11th Cir.1984).

Evidence at trial showed that there was a gun in the car Sharif was driving, that he was traveling with the car in which drugs were found, that he was speeding, and that he refused to stop immediately when ordered to by the Trooper. A law enforcement officer testified that drug traffickers often travel in pairs, using one car as a blocker to evade law enforcement. Officers also testified that Sharif and Litman had given inconsistent statements in their interviews about why Sharif had the gun and about the pair's destination. We believe that Sharif's actions would support a reasonable jury in "the belief that [Sharif] was knowingly associated with a criminal venture to possess [marijuana] with intent to distribute and participated in it as something he wished to bring about." *Richardson*, 764 F.2d at 1525. Particularly in the light of the jury's prerogative to disbelieve the testimony of Litman and Sharif, *see Globe Indemnity Co. v. Richerson*, 315 F.2d 3, 5 (5th Cir.1963) ("A jury is ordinarily entitled to believe all, any part of, or none of a witness' testimony."); *United States v. Kenny*, 645 F.2d 1323, 1346 (9th Cir.1981) ("When the defendant elects to testify, he runs the risk that if disbelieved, the trier of fact may conclude that the opposite of his testimony is the truth."), we conclude that the evidence was sufficient to sustain the jury's verdict.[1]

## II. REVOCATION OF PROBATION

■ Sharif is a foreign national—a native of Kuwait and a citizen of Jordan. He came to the United States in 1985 on a nonimmigrant pleasure visa which expired in 1986, about seven months before Sharif's arrest. The district judge sentenced Sharif to a five-year prison term for the possession with intent to distribute conviction. With Sharif's consent, the judge ordered that the sentence be suspended and that Sharif be placed on probation for five years, subject to the special conditions that (1) he voluntarily submit to deportation within 120 days; (2) he not contest his deportation and he waive his deportation appeal rights; and (3) he not return to the United States without the express consent of the Attorney General. Sentencing on the firearm conviction was set for 120 days later with the understanding that this conviction would be set aside if Sharif was deported.

Later, Sharif requested that the Immigration and Naturalization Service ("INS") deport him to Jamaica (where his mother was hospitalized) or in the alternative to Mexico or to Canada. Several days later, an INS employee questioned Sharif and noted that Sharif denied the two facts upon which his deportation was grounded: (1) his drug-related convictions; and (2) that he had overstayed his 1985 visa. INS District Counsel then sent a letter to the prosecuting attorney in Sharif's case, notifying the prosecutor of INS's view that Sharif was contesting his deportation. Several days after expiration of Sharif's 120–day period for deportation, the district court held a probation revocation hearing. The judge concluded that Sharif had violated the terms of his probation and ordered that probation on the marijuana conviction be revoked. The judge added a consecutive five-year prison term for the firearm conviction.

---

1. Sharif argues that his firearm conviction should also be set aside. He was convicted under 18 U.S.C.A. sec. 924(c), which makes criminal the carrying of a firearm "in relation to any crime of violence or drug trafficking crime." Sharif contends that if we reverse his marijuana conviction (the predicate offense), we must also reverse the firearm conviction. Because we affirm his marijuana conviction, this argument is moot.

Sharif argues that the district court abused its discretion in revoking his probation.[2] "Probation revocation is entrusted to the sound discretion of the district court, and it is only upon a clear showing of abuse of that discretion that the court's decision will be disturbed." *United States v. Rice*, 671 F.2d 455, 458–59 (11th Cir. 1982); *see also United States v. Bryant*, 431 F.2d 425, 426 (5th Cir.1970). "In a probation revocation proceeding, all that is required is that the evidence reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation; evidence that would establish guilt beyond a reasonable doubt is not required." *Rice*, 671 F.2d at 458.

Sharif contends that the court revoked his probation because the judge concluded that Sharif could not choose the country to which he was to be deported. Sharif has a limited right under 8 U.S.C.A. sec. 1253(a) (Supp.1989) to designate his preferred country of deportation,[3] *see Rodriguez–Agustin v. Immigration and Naturalization Serv.*, 765 F.2d 782, 784 (9th Cir.1985), and we note that the district judge was incorrect to the extent he suggested otherwise. But we do not read the district court's revocation decision as narrowly as

Sharif does. We believe that the court's revocation of probation was not an abuse of discretion because the evidence was sufficient to support a finding that Sharif resisted his deportation to *any* country and, thus, violated Sharif's obligation to submit voluntarily to deportation.[4]

The evidence presented at the revocation hearing included INS documentation with notes that Sharif denied the factual bases for his deportation. Sharif contends that INS wrongly construed his protestation of innocence as a denial of his convictions, and he argues that he overstayed his visa because he was in federal custody. We see no reason to believe that the district court clearly erred in finding that Sharif denied deportability in his dealings with INS, and we note that Sharif's visa expired in 1986, well before his arrest in 1987.

At the hearing, a probation officer testified that, in the officer's opinion, Sharif had violated the terms of probation. Sharif's own testimony shows that Sharif was resisting deportation and that he was uncooperative with the INS: Sharif stated that he he did not have to accept deportation to Kuwait and that he was not deportable because he was a citizen of the state of Georgia. Nothing in the record suggests

**2.** Sharif argues in his brief that the probation revocation hearing violated his due process rights because the court did not permit him to present evidence, to cross-examine witnesses, or to explain the accusation that he violated probation. The government contends that this argument was formulated based on an incomplete copy of the record. After reviewing the record, we agree with the government and find Sharif's argument meritless. Sharif was represented by counsel at the hearing; his counsel cross-examined the government's witness; and Sharif testified on his own behalf.

**3.** Section 1253(a) states that "[t]he deportation of an alien … shall be directed by the Attorney General to a country promptly designated by the alien if that country is willing to accept him…." We question, however, that INS could have lawfully deported Sharif to either Jamaica, Canada, or Mexico. Section 1253(a) says "[no] alien [shall] designate, as the place to which he wishes to be deported, any foreign territory contiguous to the United States or any island adjacent thereto or adjacent to the United States unless such alien is a native, citizen, sub-

ject, or national of, or had a residence in such designated [territory or island]." Canada and Mexico are territories contiguous to the United States, and Jamaica is an adjacent island. *See* 8 U.S.C.A. sec. 1101(b)(5) (1985). Sharif presented no evidence that he had a residence in any of those countries. To agree to be deported only to countries to which one might not lawfully be deported is hardly a display of cooperation.

**4.** The government argues that Sharif also violated the terms of his probation by failing to waive his rights to appeal deportation. At the revocation hearing, Sharif introduced into evidence an INS document signed by an immigration judge and stating that Sharif waived his right to appeal. This document appears to represent a waiver of Sharif's right to appeal only the amount of bond set by the immigration judge, pending an INS hearing on Sharif's deportation. We find no evidence in the record either to support or refute the government's contention; and because we find sufficient other grounds requiring affirmance, we do not base today's decision on any conclusion on this part of the evidence presented to the district judge.

that Sharif is or ever has been a citizen of Georgia.[5]

The exercise of judicial discretion in revoking probation "implies conscientious judgment, not arbitrary action." *Burns v. United States*, 287 U.S. 216, 222–23, 53 S.Ct. 154, 156, 77 L.Ed. 266 (1932). It " 'is directed by the reason and conscience of the judge to a just result.' " *Id.* (citation omitted). After reviewing the evidence presented at the hearing, we believe that the district judge reasonably concluded that Sharif called into question the correctness of his deportation and thus violated the terms of his probation. We cannot say that the district court abused its discretion in revoking Sharif's probation.

AFFIRMED.

**5.** At the time of his arrest, Sharif resided in Atlanta, Georgia.