[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16418
Non-Argument Calendar
_____

D.C. Docket No. 0:98-cr-06154-PAS-4


UNITED STATES OF AMERICA,

                                                      Plaintiff-Appellee,

versus

MORRIS LEON JOHNSON,
a.k.a. FNU LNU,
a.k.a. Tank,

                                                      Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 19, 2013)

Before WILSON, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Morris Leon Johnson appeals the revocation of his supervised release and his sentence of five years of imprisonment. See 18 U.S.C. § 3583(e)(3). The district court ruled that Johnson violated the condition that he not commit new offenses by possessing cocaine, see Fla. Stat. §§ 893.03(2)(a)(4), 893.13(6)(a), and by possessing marijuana, see id. §§ 893.03(1)(c), 893.13(6)(b). Johnson argues that he was denied due process because the drugs were not available to inspect when cross-examining his arresting officer and the forensic chemist who tested the drugs and that there was insufficient evidence to prove that he possessed the illegal substances. Johnson also argues that the district court plainly erred by imposing a five-year sentence. We affirm.

## I. BACKGROUND

In 2000, a jury convicted Johnson of one count of conspiring to possess with intent to distribute cocaine base, see 21 U.S.C §§ 841(a)(1), 846, and three counts of distributing cocaine base, id. §§ 2, 841(a)(1). Based on Johnson's lengthy criminal history and a motion filed by the government to enhance Johnson's sentence for his prior drug offenses, id. § 841(b)(1), his presentence investigation report classified him as a career offender, see U.S.S.G. § 4B1.1, and provided a sentence of life imprisonment for his conspiracy offense and a maximum statutory term of imprisonment of 360 months for each of his three drug offenses. Before Johnson's sentencing hearing, the Supreme Court held in Apprendi v. New Jersey,

2

530 U.S. 466, 120 S. Ct. 2348 (2000), that any fact other than a prior conviction used to enhance a sentence must be submitted to a jury and proved beyond a reasonable doubt. Id. at 490, 120 S. Ct. at 2362–63. Because the government had not charged or proved the amount of drugs that Johnson had conspired to distribute or had distributed, the district court ruled that Johnson could not receive a sentence greater than the maximum statutory penalty of 240 months of imprisonment. See 21 U.S.C. § 841(b)(1)(C). The district court sentenced Johnson to four concurrent terms of 240 months of imprisonment, followed by four concurrent terms of three years of supervised release.

In 2008, Johnson moved to reduce his sentence under Amendment 706 to the Sentencing Guidelines. 18 U.S.C. § 3582(c). The district court granted the motion, sentenced Johnson to four concurrent terms of 168 months of imprisonment, and left undisturbed Johnson's sentence of supervised release. Johnson appealed, and we affirmed. United States v. Johnson, 370 Fed. App'x 1 (11th Cir. 2010).

Approximately one year after Johnson was placed on supervised release, the probation office filed a petition to revoke his supervised release. The petition charged Johnson, in relevant part, with violating Florida law by possessing cocaine, Fla. Stat. §§ 893.03(2)(a)(4), 893.13(6)(a); possessing marijuana, id.

§§ 893.03(1)(c), 893.13(6)(b); and resisting arrest without violence, see id.
§ 843.02.

During the revocation hearing, the prosecutor presented testimony from Johnson's arresting officer and the forensic chemist who tested the drugs. Officer Dale Graziose of the City of Lauderdale Police Department testified that he stopped Johnson for riding a bike at night without a light and retrieved from Johnson's front pants pocket a white cylinder that appeared to contain rocks of crack cocaine and a large plastic bag containing 21 smaller bags filled with what appeared to be marijuana and powder cocaine. Graziose testified that he transported the substances to the police station and, when a preliminary test revealed that the substances contained marijuana and cocaine, he sealed the items in separate plastic bags and placed them in an evidence bag. Graziose also testified that he marked the evidence bag with case number 12-03-5224 and left the bag in a secured evidence locker for a property coordinator to deliver to the crime laboratory. Deborah Friedman, a forensic chemist in the Sheriff's Office of Broward County, testified that the plastic bags containing leafy substances tested positive for marijuana and that the bags containing the white powder and rocks tested positive for cocaine.

As Johnson was cross-examining Friedman about her testing process, the district court questioned the prosecutor and learned that he had not brought the

4

drugs to the hearing and that they were in the custody of state officers.  Johnson moved to dismiss the petition for revocation on the grounds that the absence of the drugs undermined the integrity of the chain of custody because Friedman could not match the case number from the evidence bag to the substances she had tested and that the government could not prove Friedman tested the substances seized by Graziose.  The government then introduced, without objection, Friedman's forensic report, which stated that the test results correlated to "Agency Case: 12-03-5224."  Johnson declined to continue cross-examining Friedman on the ground that an examination of the evidence bag would "resolve" his concerns.  The prosecutor then elicited from Friedman on redirect that the evidence bag had been marked with the name "Morris Johnson" and with the date and time when the evidence had been collected.

Johnson testified that Grazoise stopped him without cause.  Johnson testified that Graziose "put [a] gun to [Johnson's] head and pursued [him]" and that Graziose had "throw[n] drugs on top of the hood of his car" after arresting Johnson.  Johnson denied having told his probation officer that Graziose discovered the drugs inside a backpack that had been stolen and then recovered by Johnson shortly before his arrest.

After a brief recess, the district court entertained arguments about whether the prosecutor had to produce the drugs for the hearing.  The prosecutor argued

5

that the drugs were not required because the evidence from Graziose and Friedman bore "all the indicia of reliability and credibility" to prove that Johnson had possessed cocaine and marijuana.  Johnson argued that "the [C]onfrontation Clause . . . [required that Graziose] identify the drugs in court as the drugs seized from Mr. Johnson and that . . . [Friedman] be required to . . . testify that the items that she took out of whatever evidence bags were in front of her were the items seized by [Graziose] . . . and linked to Mr. Johnson."

The district court ruled that the prosecutor did not have to produce the drugs at the revocation hearing and that there was sufficient evidence to find that Johnson violated the condition of his supervised release that he not commit a new offense. The district court rejected Johnson's testimony as not credible and credited the testimonies of Graziose and Friedman.  The district court determined that the testimonial evidence did not contain hearsay and did not "implicate the right of cross-examination" and that Johnson's argument "really[] [pertained to] a gap in the chain of custody" that affected the weight instead of the admissibility of the evidence.  The district court determined that the testimonies of Graziose and Friedman and the contents of the forensic report were "sufficient even without the drugs that [were] in State custody" to prove that Johnson violated the conditions of his supervised release by possessing marijuana and cocaine.  The district court also

ruled that Johnson did not violate his supervised release by resisting an officer without violence.

The district court revoked Johnson's supervised release and considered the parties' arguments about the length of Johnson's sentence. Johnson requested a sentence at the low end of the advisory guideline range of 21 to 27 months of imprisonment, and the prosecutor requested a sentence at the high end of the guideline range. The prosecutor stated that a sentence of 27 months would be less than the statutory maximum sentence of five years of imprisonment. The district court determined Johnson's advisory guideline range, stated it did not "have to follow the guidelines," and then sentenced Johnson to "a period of five years." The district court explained "that sentence [was] necessary in order to protect the public and also because of [Johnson's] repeated recidivism" and his "need [for] mental health treatment."

## II. STANDARDS OF REVIEW

This appeal is governed by several standards of review. We review the revocation of Johnson's supervised release for abuse of discretion. United States v. Frazier, 26 F.3d 110, 112 (11th Cir. 1994). In so doing, we review conclusions of law de novo, id., and related findings of fact for clear error, United States v. Almand, 992 F.2d 316, 318 (11th Cir. 1993). Because Johnson did not challenge

the severity of his sentence on the ground he argues on appeal, we review only for plain error.  See United States v. Rodriguez, 627 F.3d 1372, 1380 (11th Cir. 2010).

### III. DISCUSSION

Johnson argues that the district court committed two errors during the revocation hearing.  First, Johnson argues that he was denied due process when he was unable to confront Graziose and Friedman with the drugs to verify that the chain of custody was uninterrupted and that the drugs seized by Graziose were the same substances tested by Friedman.  Johnson contends that the government failed to prove that he possessed marijuana and cocaine.  Second, Johnson argues that the district court plainly erred by imposing a sentence that exceeded the maximum statutory penalty allowed when revoking a single term of supervised release.  We address each argument in turn.

*A. Johnson's Right to Due Process Was Not Violated During His Revocation Hearing.*

A releasee charged with violating a term of his supervised release is not entitled to the same procedural protections afforded the accused in a criminal trial. See Morrissey v. Brewer, 408 U.S. 471, 480, 92 S. Ct. 2593, 2600 (1972); Frazier, 26 F.3d at 113–14.  The releasee is afforded the minimum requirements of due process, which entitles him to disclosure of the evidence against him and a hearing at which he can present evidence and confront and cross-examine witnesses. Morrissey, 408 U.S. at 489, 92 S. Ct. at 2604; see Fed. R. Crim. P. 32.1(b)(2).  The

8

hearing must be "structured to assure that the finding of a . . . violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of [his] behavior," id. at 484, 92 S. Ct. at 2602, yet should involve a "process . . . flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial," id. at 489, 92 S. Ct. at 2604. Due to the informal nature of a revocation hearing, the Federal Rules of Evidence do not apply. See Frazier, 26 F.3d at 114.

The revocation hearing afforded Johnson due process. Johnson was able to confront and cross-examine Graziose, the arresting officer who seized the substances. See Fed. R. Crim. P. 32.1(b)(2). Graziose testified and underwent a vigorous cross-examination about his discovery of the drugs and the steps he took to secure the drugs for forensic testing. Johnson also was able to confront and cross-examine Friedman, the chemist who tested the substances. Although Johnson was unable to have Friedman identify the drugs during the revocation hearing, Johnson was able to question Friedman about the drugs she tested and to highlight any discrepancies that might have existed between her observations and those of Graziose regarding the character and quantity of the drugs. Johnson was limited in his ability to question Friedman about the chain of custody, but information about the chain of custody was needed only to authenticate the drugs in the event that they were introduced into evidence. See United States v. Lopez,

9

758 F.2d 1517, 1520 (11th Cir. 1985).  Johnson did not argue in the district court, nor does he argue on appeal, that Friedman's testimony should have been excluded, and the district court was not bound by the Rules of Evidence in deciding whether to admit Friedman's testimony.  See Frazier, 26 F.3d at 114.  The district court recognized that a "gap in the chain of custody" affected the weight of Friedman's testimony, see United States v. Roberson, 897 F.2d 1092, 1096 (11th Cir. 1990), but the district court determined that the evidence was "sufficient even without the drugs" to prove that Johnson had violated the conditions of his supervised release by possessing marijuana and cocaine.

The district court did not abuse its discretion in determining that the government proved by a preponderance of the evidence that Johnson violated the conditions of his supervised release by possessing marijuana and cocaine.  See 18 U.S.C. § 3583(e)(3).  The government presented evidence that Graziose seized from Johnson several packages of substances, which tested positive for the presence of marijuana and cocaine in a field test.  That field test was consistent with the results recorded in the forensic report, which was admitted into evidence without objection.  The district court based its decision on "the evidence from the chemist and Officer Graziose," from which it reasonably could infer that Friedman tested the drugs seized from Johnson.  See United States v. Hope, 901 F.2d 1013, 1021 (11th Cir. 1990) (When we examine the sufficiency of the evidence, we

"view[] the evidence in the light most favorable to the government and accept[]

reasonable inferences and credibility choices made by the factfinder."). Graziose

and Friedman testified consistently about the quantity of substances collected;

Friedman recalled that Johnson's name had been written on the evidence bag; and

Friedman's report stated that the test results correlated to the same case number

that Graziose had written on the evidence bag. And the district court could

discredit Johnson's testimony that he did not possess the drugs and infer "that the

opposite of [his] testimony [was] true." See United States v. Mejia, 82 F.3d 1032,

1038 (11th Cir. 1996), abrogated on a different ground, Bloate v. United States,

559 U.S. 196, 130 S. Ct. 1345 (2010). The district court readily could determine

from this evidence that Johnson's conduct "[had] not been as good as required by

the conditions of probation." United States v. Penn, 721 F.2d 762, 766 (11th Cir.

1983) (quoting United States v. Rice, 671 F.2d 455, 458 (11th Cir. 1982)).

*B. Any Error in Determining Johnson's Sentence Did Not Affect Johnson's Substantial Rights.*

Johnson did not object to his sentence on the ground that it exceeded the

maximum authorized penalty, and so we review the issue for plain error. Under

that test, Johnson must prove that an error occurred, the error is plain, and it

affected his substantial rights. See Rodriguez, 627 F.3d at 1380. To establish that

an error affected his substantial rights, Johnson must prove that there existed "a

reasonable probability of a different result but for the error." See id. at 1382

11

(internal quotation marks and citation omitted).  "That means that 'where the effect of an error on the result in the district court is uncertain or indeterminate — where we would have to speculate — the appellant has not met his burden of showing a reasonable probability of a different result.'"  Id. (internal quotation marks and citation omitted).

Johnson faced a maximum statutory penalty of eight years of imprisonment. Johnson was convicted of the underlying crimes of conspiring to distribute and possessing with intent to distribute cocaine base, see 21 U.S.C §§ 2, 841(a)(1), 846, but in the absence of a finding of the amount of the illegal substance involved, the district court could not sentence Johnson to more than 20 years of imprisonment, see United States v. Sanchez, 269 F.3d 1250, 1270 (11th Cir. 2001) (en banc).  With a 20 year sentence, Johnson's underlying convictions qualified as Class C felonies.  See 18 U.S.C. § 3559(a)(3).  The maximum authorized sentence for revocation of a term of supervised release for a Class C felony is 2 years.  See id. § 3583(e)(3).  The district court originally sentenced Johnson to four concurrent terms of supervised release, and when it revoked those terms it could have imposed a sentence of two years for each term of supervised release and then ordered that those sentences run consecutively.  See United States v. Quinones, 136 F.3d 1293, 1294–95 (11th Cir. 1998).

12

Johnson and the government agree that agree that the district court erroneously imposed a sentence of five years under the mistaken belief that the term was the maximum statutory penalty Johnson faced for violating the conditions of his supervised release, but Johnson fails to prove that error affected his substantial rights. The district court sentenced Johnson to a term of imprisonment that was three years less than his maximum penalty of eight years of imprisonment. And Johnson has not proved that there is a reasonable probability that he would have received a lower sentence had the district court realized its mistake. See United States v. Pantle, 637 F.3d 1172, 1177 (11th Cir. 2011). The statements of the district court suggest that it wanted to impose the maximum sentence available. The district court refused to impose a sentence within the advisory guideline range because of Johnson's extensive history of serious criminal offenses, his recidivism, the need to protect the public, and the need to provide Johnson with mental health care. Because "the burden truly is on [Johnson] to show that the error actually did make a difference," see id. (quoting Rodriguez, 398 F.3d at 1300), and he cannot do so, we cannot conclude that the error affected Johnson's substantial rights.

## IV. CONCLUSION

We **AFFIRM** the revocation of Johnson's supervised release and his sentence of five years of imprisonment.

13